and Advanced Microdevices, 2019-17-61, Mr. DiFincenzo. IYM Technologies LLC v. RPX Corporation and Advanced Microdevices, 2019-17-61, Mr. DiFincenzo. Good morning, Your Honors. With respect to proceeding 2-19-17-61, the Board's finding of obviousness cannot stand because the Board wrongly found that CODI expressly discloses two limitations. The first limitation requires local process modifications that change initial constraints. The claims on their face require initial constraints and then a computation of local process modification that change those constraints. The Board found the local process modification limitation was met based on CODI's supposed teaching of changes to initial design rules 505 that result from running simulations on layout 510 amount to the claim local process modifications. However, CODI only discusses design rule 505 in reference to the initial layout creation step. CODI never discusses design rules 505 with respect to the optimization. RPX does not dispute that. On appeal in their response, RPX does not argue that the Board's finding that design rules 505 are changed is met by substantial evidence. Instead, RPX disputes what the Board found. RPS argues on both page 29 and 35 of its response brief that the Board never found that changes to design rules 505 meet the local process modification limitation. What the Board found shouldn't be in dispute. The Board stated three separate times that changes to initial design rules 505 and nothing else met the local process modifications limitation. Those findings of the Board are stated on page 22 of its decision, 23 of its decision, and 32 of its decision, and they're all quoted in full in our reply brief. The Board's repeated statements were not slight imprecisions as argued by RPX. The Board recognized expressly on page 26 of its decision that RPX repeatedly and consistently took the position that CODI's changes to design rules 505 teach the claimed local process modifications limitation. The Board relied on RPX's own argument below for that finding. The Board cited to RPX's reply brief below, and that's at A2231. In the reply brief, RPX argued that the initial constraints, and that's A2231, they argued the initial that the changes to the initial constraints must be the changes to design rules. RPX pointed to nothing else. Importantly here is RPX does not dispute that the Board's finding regarding changes to design rules 505 is unsupported by substantial evidence. The Board's finding of obviousness cannot stand. This court reviews decisions and the evidence relied on by the Board, not the party's arguments below. And here, RPX's arguments below should not be in dispute. Now, on appeal, RPX makes an alternative argument, which was not found by the Board. RPX argues that CODI's changes to initial constraints meet the claim limitation changes to initial constraints. That is not an argument. That is an attempt to confuse the issue. RPX never responds on appeal with what exactly are the initial constraints, how CODI teaches changes to initial constraints result in new initial constraints with respect to limitation A. As RPX's argument is just based on a repetition of the claim language and not on a viable theory based on the disclosures in CODI's itself, there is no reason to remap. With respect to the second limitation, new local constraint distances. That limitation requires constructing new local constraint distances by combining local process modifications with constraint distance. Now, there was a lot of confusion in the party's briefing over the difference between a distance and a constraint distance. There shouldn't be a dispute here. A distance is how far apart two objects on a layout are placed. A constraint distance is a limit, specifying how far apart objects must be spaced. Now, with that understanding, the Board's finding of obviousness cannot stand. The Board found that CODI discloses two examples of constraint distances. On page 34 of its decision, it constraint distance because it illustrates feeding additional constraints 518 into layout optimizer 520. And the Board cites column 5, line 30 to 36. Column 5, line 30 to 36 doesn't mention constraint distances. There's no dispute there. The Board did not provide a reason, rationale on why it was reading column 5, line 30 to 36 as specifying a constraint distance of this sort. Thus, that finding of the Board with respect to example 1 is not supported by substantial evidence. The Board also relied on figure 6. The Board stated, and this is on page 34 to 35 of its decision, figure 6 of CODI provides another example of a constraint distance because it illustrates increasing the distance between two features. That's just a misreading of CODI. CODI does not show constraint distances. D1 in CODI is described in CODI itself as a distance, not a constraint distance. CODI explains, and this is that in the original layout T, the two features were a distance D1 apart. So they were a distance D1 apart. But in the new layout, the features are spaced further apart. That's a distance, and it's saying it's spaced further apart at a new distance. It's not a constraint. It doesn't tell you how it was made. In without using constraint distances. Both experts agreed other types of constraints could be used. So this, although this isn't an inherent disclosure case because inherency was waived, it's an express disclosure case, and this is even one step removed. And lastly, with respect to Dr. Nagel. Dr. Nagel, in the briefing, there was a lot on what's a reasonable inference and what's not, and whether an expert can expound on a reference. Well, here the court does not have to get into that because Dr. Nagel drew no inferences. The reason he concluded that CODI discloses distances is in the appendix on 346 and paragraph 170. Dr. Nagel said, and I quote, CODI explains that these local process modifications are additional distances, and he offers two sites. That's not an inference. That's a statement that's not supported by the two sites he provided. He provides one site to the portion I just read, which discloses distances, but not constraint distances, and the only other thing he relied on for that statement was the background, and the background, we all agree, does not disclose new local constraint distances. He simply stated that CODI describes them as constraint distances when on its face, CODI offers no such description. So in this case, reasonable inferences cannot be used to substitute for an express disclosure because their expert did not purport to make inferences. All he said was it's expressly disclosed. And lastly, with the board found that it would have been a matter of design choice to substitute CODI's optimization with a heuristic procedure. The basis for the board's finding was that heuristic procedures and optimization techniques such as those taught by CODI were known alternatives. The only and it's paragraph 198. What Dr. Nagel relies on for optimization and heuristic procedures being known alternatives is the O-1-2 patent, the patent in suit, and it's not the background. It's where the inventors of the O-1-2 patent explain that part of their inventive contribution was realizing that optimization techniques could be substituted with heuristic procedures. There is no other evidence relied on by Dr. Nagel for the proposition that heuristic procedures were known alternatives to optimization. And in the absence of some evidence where these were known to be alternatives for each other, we submit that the board's finding with respect to Claim 14 cannot stand. Unless the court has any questions, I'll move we'll save your rebuttal time. Mr. Speed. May it please the court, good morning. Nathan Speed on behalf of the appellees RPX and AMD. All the arguments that we just heard, they were fact-intensive arguments that were raised below before the board. The board considered it. It considered it after having reviewed a record with over 50 exhibits, the testimony of two expert witnesses, multiple rounds of briefing by the parties, and a lengthy oral argument. IYM is asking this court to reweigh the evidence that the board considered below, and we would respectfully submit that under the substantial evidence rule, the board should, this panel should not do so. We'll start with limitation D. Limitation D, using IYM's own brief at pages 10 and 12, limitation D starts with a layout where you have a system of initial constraints. And these constraints are distances that set the spacing between the objects. So you have an object in their practical example they provide at page 12. You have two objects that are 10 nanometers apart. Then the 012 patent calculates a simulation of what would happen if you actually printed that chip using that exact layout. And that identifies areas where, due to manufacturing imperfections, the 10 nanometers is a bulge and you might actually have a short circuit. And so the 012 patent calculates what it calls local process modifications, which identify a change that's necessary to that initial constraint. So in their practical example, it's a 5 nanometer increase, which would then change that initial constraint from 10 nanometers to 15 nanometers. The board found that CODI discloses this exact same process and substantial evidence supports that finding. After summarizing the board, the party's positions at page 19 to 21 of its decision, the board then went in to offer its interpretation of CODI. Relying primarily on column 5 and the figures 5, 6, and 7 that are referenced in column 5 of CODI, the board walked through exactly what CODI does. CODI, just like the 012 patent, starts with a layout in which you use a system of initial constraints to set the spacing of the objects. In the background section of CODI, which a person of skill and art would read because they're reading the entire reference as a whole, the only constraints disclosed are minimum spacing and minimum line widths. Minimum spacings are indisputably a constraint. So there are only distance constraints disclosed in the background section of CODI. You then use those constraints to create the initial layout, just like the 012 patent. Just like the 012 patent, you simulate what would happen if you printed the circuit using those initial constraints. What you get is an image that you then can color that there are three areas where there's a bridging of material. Those are problem areas that CODI identifies. To resolve those problem areas, CODI computes what it calls local layout requirements. Those local layout requirements optimize the circuit, as shown in figure 6 of CODI, which the board also cites. Figure 6 of CODI shows in the image below it shows what would be revealed in a simulated image of that constraint, and it shows a bridging. CODI recognizes that's a problem, and so it calculates its local layout requirements. The result of calculating the local layout requirements is shown in the top right of figure 6, which is that the space between the two objects has increased. The only disclosure in CODI for how you set the spacing between objects is, again, in the background of the patent when it's describing minimum spacing or distance constraints. The board, after providing its interpretation of CODI at page 22, it approvingly cites Dr. Nagel at page 23 of its opinion for the proposition that CODI's local layout requirements are used to change the initial constraint imposed by the design rule, and that change that is calculated using the for its detailed description of its optimization technique. It relied on figures 5, 6, and 7, and it then relied on the testimony from Dr. Nagel to reach its factual determination that the local process modification is disclosed in CODI. The suggestion earlier this morning that the board adopted a different finding that it was changes to the initial design rules. Respectfully, we think that's an unreasonable reading of the final written decision. At page, throughout the proceeding, our position was clear that the changes being made were changes to the initial constraints. We made that argument in our petition at appendix 214. We reiterated it in our reply at 2231, and it's the through the various parties' positions and the facts and law supporting them. At page 15, it identified our argument as a change to the initial constraint. At page 21, it identified our argument as a change to the initial constraint. At page 22, it said, having reviewed this entire record, we agree with RPX and its expert Dr. Nagel. And then at page 23, it approvingly Dr. Nagel's quote on paragraph 166, where he expressly says that the change is a change to the local process modification. When later addressing the myriad of arguments that IYM raised below but doesn't present here, the board, in instances, did refer to changes to the design rules, and that is not entirely correct in the sense that what was changed was a constraint. However, the rules impose the constraints, and so they do go hand in hand. It's the best analogy I could come up with. My curfew for my children is 8 p.m., but maybe Friday night we're watching a movie and I extend it to 8.30. My kids might say I've changed the rule. I might say I just changed the application of that rule to that specific scenario. More importantly, limitation D is setting up how you calculate, how you compute the change that needs to be applied. Limitation E is where you actually make the change. So that's showing you expressly what is being changed. When the board addresses limitation E, appendix 33, and it looks at figure 6, it's making clear that what's happening is you have an initial distance, and then you're adding to that initial distance. Now, again, the only way that that initial distance was set in CODI is by an initial constraint distance, and so you're adding on to it. So we see that the board was not confused as to what was being changed. It's that D1. D1 is now becoming D1 plus a D delta, and that's a change to an initial constraint. Turning to the argument on limitation E, which is the additional distances, again, CODI discloses only minimum spacing and minimum line widths, which are distance constraints. There are theoretical alternative constraints that would exist, such as a fixed position constraint, which would literally mean, rather than increasing the distance between two components, setting an x or y parameter for each of those and fixing them on that board. Our expert agreed that, theoretically, you could do that, but when asked, isn't that what a person of skill would actually have interpreted CODI disclosing would have done to make the optimization show to figure 6, he said, that's a nightmare. No one would have done it. It's a completely speculative interpretation or theoretical implementation that technically exists, but no reasonable person reading CODI would find that that's what is being disclosed. Indeed, their own expert conceded that CODI says nothing about fixed point constraints. As for area constraints, the other issue that they raised on appeal, IOM Below never argued that CODI actually discloses area constraints. They kind of lumped it together with fixed point constraints and said these are things that were known, and therefore a person of skill in the art would bring that knowledge to reading CODI and would be confused as to what the additional constraints that are disclosed in CODI. It wasn't until their SIR reply that they happened in their lengthy string cite-to-cite to CODI, a different portion of CODI, columns 5, lines 30 and 33, and that's kind of the hook they've used to bring up on appeal. It's unsurprising that there's no expert testimony here that CODI discloses area as an actual constraint. Regardless of a potential waiver and the fact that there's no expert testimony on it, it's a red herring because the embodiments in which area is referenced as a potential constraint. There's one embodiment at column 5, lines 37 to 43, and in that embodiment, area is referenced as not a constraint. It literally says that you optimize without regard to the area of the chip. In that embodiment, which again would be using the additional distances 5, 18 that the board found to meet the limitation, those additional constraints cannot be an area constraint because area is not being used as a constraint. In the second embodiment immediately following that, where area is referenced as a constraint, they're setting a limitation on the size of the chip. They're saying optimize it as much as you want, which again, the optimization, everyone agrees, requires moving objects further apart. But we're going to set a limit on the size of the chip, maybe 1 inch by 1 inch, and you can't go larger than that. So it does limit how much you can move all the objects. But there is nothing in the record to explain how limiting the size of the chip would accomplish the optimization that's shown in figure 6 to resolve the local problem areas shown in figure 7. You have local problem areas, you're resolving them by moving them farther apart, and there's nothing in the record to explain how an area constraint could possibly do that. As for Claim 14, the board, Claim 14 limits Claim 1 to the use of a heuristic method. The board found that it would have been obvious to modify CODI to use a heuristic rather than an optimization algorithm. And maybe two critical fact findings that substantial evidence supports, and which merit affirmative, the finding. First, the board found that it would have been well-known in the art, that heuristic algorithms were well-known in the art. There is no real dispute on that any longer. Page 22 of the reply brief, they agree, they were well-known in the art. IYM seems to be taking the position that while they were well-known in the art of integrated circuit layout using computers, it wasn't known to use them in the specific context of Claim 14, which requires using these new local constraint distances. It's a chicken-and-the-egg issue, where because we allegedly came up with a novel idea of having a new local constraint distance, no one could have possibly used a heuristic to do that. But there's nothing in the patent, as the board found at Appendix 46 to 47, about heuristics and any unique capability of using a heuristic to enforce a new local constraint distance. The only reference to a heuristic in the 012 patent is to make clear that a conventional heuristic, such as what was disclosed in the Chen patent, which was published seven years before the filing date of the 012 patent, you could use one of those. It was just a simple example that you could use. And so if there is something unique about using a heuristic, there's certainly not disclosed in the 012 patent. As for the viable substitution, the board relied on Dr. Nagel's testimony, which he supported with reference both to the Allen reference, which shows the use of a heuristic algorithm to make adjustments in an integrated circuit layout, and on the Chen reference, which is expressly referenced as omitted prior art in the 012 patent, as again, showing a heuristic algorithm that can be used in this exact context. So based on the record, you have optimization can be used, and you have heuristics can be used. And there was no dispute that using them, that it would be unduly burdensome on a person with a skill in the art to do so. There was a reference to Dr. Nagel's deposition testimony where he said it would be hard to know what precise algorithm to use in coding. The very next question is, well, what specific heuristic would a person with a skill in the art use? And he said the Chen reference. So while he said it was hard, the very next sentence he said he'd use the Chen reference, and he explained why. Because heuristics, while they don't achieve the optimum result, they're computationally less intensive. And he reiterated that on Appendix 2076 when he's asked the direct question from IOIM's counsel, what's the motivation to use a heuristic? So he gives that express answer right there. So the board's finding that they would be viable substitutes completely grounded in the record evidence. The finding of obviousness naturally follows. We have a simple substitution of one known element for another to yield a predictable solution. The viability of the substitution goes to the fact that it's a predictable solution. There's not going to be any challenges in putting these together. So a person with a skill in the art is going to be confronted with these designs and recognize that they can substitute Cody's optimization for a heuristic disclosed in the prior art, whether it's Chen, general knowledge, what have you. Unless there's any questions, I'll yield the rest of my time. Thank you, counsel. Mr. DiFrancisco has some rebuttal time. It was notable for what we didn't hear. The board expressly found that the limitation D, the local process modification, was met by changes to initial design rules 505. The board found nothing else met that limitation. Counsel did not attempt and did not argue, up here today or in their brief, that the board's finding that changes to initial design rules 505 is disclosed in Cody. There are no such changes. And since there's no dispute that Cody does not change initial design rules 505, the only dispute with respect to limitation D is what did the board find. And the board tells us what they found over and over again. They say on page 22, the changes to initial design rules 505 that result from running simulations on layout 510 amount to the claim local process modifications. On page 23, they said Dr. Nagel's testimony is consistent with Cody's disclosure of the changes to initial design rules 505. On page 32 of their decision, they said, as we previously explained, when addressing how Cody teaches the claim local process modifications, Cody discloses making changes to initial design rules 505. And they made that finding because RPX repeatedly and consistently took the position below that Cody's changes to design rules 505 meet the local process modifications. And that's not my language on repeatedly and consistently. That's the board's on page 26 of its decision. Now on appeal, RPX argues that's not what the board found. As that is certainly what the board found, this court cannot affirm. Because this court reviews the analysis provided by the board and the evidence relied on. And what you heard on appeal, the only alternative, the reason which could only get them revamped, they argued that the initial constraints in Cody are the initial constraints of the claim. The important thing there is Cody doesn't use the words initial constraints. Cody uses the words design rules. And unable to support their argument below or the board's decision, they attempt to make their argument vaguer. Now with respect to the disclosure of area, Cody only discloses area constraints with respect to additional constraints. Cody states when discussing additional constraints, it says generating local layout requirements 518 to optimize layout characteristics, e.g. area. Counsel pointed to a supposed different embodiment that keeps area constant. What counsel didn't tell you is that Cody discloses the constraint used in that embodiment. It's on column 5, lines 36 to 40. In that embodiment, Cody discloses a predetermined target process latitude regardless of area. So process latitude would be the constraint there, not distance. So Cody indisputably discloses area constraints and process latitude constraints and not just distance constraints. And with respect to the argument that, well, we didn't raise area constraints below and it's been waived, that's just not true. If you look at our response brief or, sorry, APPX 1714 which was our patent owner's response, APPX 2678, that was our surrogate, reply below. And both of them we identified the additional constraints disclosed in Cody. Unless the court has any questions. Thank you. But you have observed we have our own constraints. What? We have our own constraints. We'll take the case under advisement.